(C.D. 3965)

HANCOCK GROSS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 12, 1970)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Glenn E. Harris* and *Herbert P. Larsen,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: This case concerns the proper tariff classification for certain plumbing supplies imported from Japan and sold under the name of "Drain or Fill."

The merchandise was assessed with duty at the rate of 17 per centum ad valorem under item 654.20 of the Tariff Schedules of the United States (TSUS), and is claimed by plaintiff to be properly dutiable at the rate of 10 per centum ad valorem under item 660.94, TSUS, as amended by the Tariff Schedules Technical Amendments Act of 1965, Public Law 89-241, 78 Stat. 933, T.D. 56511.[1]

## STATUTES INVOLVED

Tariff Schedules of the United States

Classified Under: Schedule 6, Part 3, Subpart F:

> Articles not specially provided for of a type used for household, table, or kitchen use; toilet and sanitary wares; all the foregoing and parts thereof, of metal:
>
> \*      \*      \*      \*      \*      \*      \*
>
> Articles, wares, and parts, of base metal, not coated or plated with precious metal:
>
> \*      \*      \*      \*      \*      \*      \*

654.20    Other _____    17% ad val.

Claimed Under: Schedule 6, Part 4, Subpart A:

> Pumps for liquids, whether or not fitted with measuring devices; liquid elevators of bucket, chain, screw, band, and similar types; all of the foregoing whether operated by hand or by any kind of power unit, and parts thereof:
>
> \*      \*      \*      \*      \*      \*      \*

660.94    Other _____    10% ad val.

## THE ISSUE

The parties agree that the sole issue is whether or not the merchandise is a pump for liquids operated by hand or by any kind of power unit.

For the reasons given hereinafter, we sustain plaintiff's claim under item 660.94, TSUS.

---

[1] At the trial, plaintiff abandoned its alternative claims under items 654.00 and 654.05.

## THE FACTS

The sole witness in this case was Herbert Rosen, long-time sales manager for the plaintiff corporation. A representative sample of the merchandise was received in evidence as plaintiff's exhibit 1. From Mr. Rosen's testimony and the exhibit, we find the following facts:

The "Drain or Fill" measures approximately 5¼ inches in length and consists basically of a converging nozzle. At the top of the nozzle, there is an inlet for water and a female-threaded connector which is designed to screw onto a male-threaded water faucet. Protruding from one side of the nozzle, immediately below the female-threaded connector, there is a hollow cylindrical appendage approximately 1½ inches in length which serves as an inlet or outlet for liquid through a rubber hose.[2] At the bottom of the nozzle there is an opening for the discharge of water coming from the faucet and the rubber hose. Also near the bottom of the nozzle there is a bell-shaped attachment containing a rubber stopper. By raising the bell-shaped attachment, the rubber stopper closes the bottom opening, so that water coming from the faucet will be diverted to the outlet at the appendage and will discharge through an attached rubber hose.

The "Drain or Fill" may be used to pump water in the following manner: A rubber hose is attached to the appendage, and the female-threaded connector is screwed onto a water faucet. The end of the attached hose is placed in the area or receptacle from which water is to be pumped (drained). When the water faucet is turned on, the jet of water will pass the opening where the appendage on exhibit 1 is located, resulting in a suction. The fluid in the area to be drained is drawn into the hose by suction and is discharged at the bottom opening. If the water faucet is turned off, no suction is produced, and the "Drain or Fill" cannot pump water.

When a receptacle is to be filled while the "Drain or Fill" is on the faucet, the bell-shaped attachment is raised so that the rubber stopper closes the bottom outlet. Water from the faucet will then be diverted from coming out the bottom of the "Drain or Fill" and instead will run out through the rubber hose. Thus, the bell-shaped attachment permits the "Drain or Fill" to remain on the faucet while filling a receptacle with the use of the hose. Under such circumstances, the "Drain or Fill" becomes an extension of the hose, so that the hose need not be connected directly to the faucet before the user can alternate from pumping water out of one object to filling another object.

---

[2] The "Drain or Fill" was imported without a rubber hose attached to the appendage.

## "Pumps for Liquids"

Although this court has frequently dealt with the classification of pumps under the Tariff Act of 1930 and predecessor acts,[3] there was no *eo nomine* provision for pumps prior to the Tariff Schedules of the United States. The new provision for "Pumps for liquids" in item 660.90, TSUS,[4] appears to have been derived from heading 84.10 of the *Nomenclature for the Classification of Goods in Customs Tariffs*, generally known as the Brussels Nomenclature.[5] Heading 84.10 provides for:

> Pumps (including motor pumps and turbo pumps) for liquids, whether or not fitted with measuring devices; liquid elevators of bucket, chain, screw, band and similar kinds.

The scope of heading 84.10 is set forth in the *Explanatory Notes to the Brussels Nomenclature* (Vol. III, page 784) as follows:

> This heading covers most machines and appliances for raising or otherwise continuously displacing volumes of liquids, whether they are operated by hand or by any kind of power unit, integral or otherwise.[6]

In the Brussels explanatory notes (page 786) the following description of "Ejector Pumps" appears applicable to the devices involved in this case:

> A high speed jet of air, steam or water emerging from a nozzle produces a suction (or entrainment) effect on a liquid introduced around the periphery. In practice these pumps comprise a system of divergent and convergent pipes in a closed chamber fitted with inlets for the liquid, a high pressure jet and an outlet.

Although the record does not establish that the merchandise is commercially known as an "ejector pump," the "Drain or Fill" is closely analogous to such a pump in its mode of operation.

In addition to the *Explanatory Notes, supra,* we have noted the following definitions of "pump":

*Engineering Encyclopedia,* Second Edition, page 1010:

> A pump may be defined as a mechanical device or machine designed for elevating or conveying liquids against the action of

---

[3] See e.g., *Victoria Distributors, Inc.* v. *United States,* 56 Cust. Ct. 284, C.D. 2639 (1966), and cases cited therein.

[4] Item 660.90 was repealed by section 36(c) of the Tariff Schedules Technical Amendments Act of 1965, Public Law 89–241, 79 Stat. 933, T.D. 56511, effective December 7, 1965; and items 660.92 (fuel injection pumps) and 660.94 (Other) were inserted in the tariff schedules in lieu thereof. The merchandise in this case was entered for consumption on February 25, 1967.

[5] *Amalgamated Sugar Company* v. *United States,* 60 Cust. Ct. 268, C.D. 3361, 281 F. Supp. 373 (1968).

[6] This note was used substantially verbatim by the Tariff Commission in the *Tariff Classification Study,* Schedule 6, page 261, with reference to item 660.90, TSUS.

gravity * * *. A pump for liquids may be intended primarily for elevating the liquid from a source of supply below the pump up to the pump, or the principal purpose may be to force the liquid either to a much higher level or to some distant point by connecting the pump with suitable pipes. * * *

*Webster's New International Dictionary*, Second Edition, Unabridged (1953), page 2011:

pump * * * 1. *Mach.* A device or machine that raises, transfers, or compresses fluids * * * esp. by suction or pressure, or both.

The distinction between a pump, which can raise a fluid against the action of gravity by suction, and a siphon tube is plainly evident from the following definition of "siphon" in Webster's dictionary, *supra*, page 2347:

siphon * * * Also syphon. * * * 1. A pipe or tube bent to form two branches or legs of unequal effective length, by which a liquid can be transferred to a lower level, over an intermediate elevation, by the pressure of the atmosphere in forcing the liquid up the shorter branch of the pipe immersed in it, while the excess of weight of the liquid in the longer branch (when once filled) causes a continuous flow. The flow takes place only when the discharging extremity is lower than the liquid surface, and when no part of the pipe is higher above that surface than the same liquid will rise by atmospheric pressure (about 33 feet for water, 30 inches for mercury, near sea level). * * *

Both parties agree that the merchandise employs the principle of the "venturi tube"; but defendant suggests that a venturi device cannot be a pump in the commercial sense since it has no moving parts such as pistons or valves. We cannot agree. In the *Encyclopaedia Britannica*, 1970 edition, Volume 18, page 865, the "venturi pumping device" is described as follows:

A number of pumping devices can be explained by reference to the venturi tube. As illustrated in fig. 6, the venturi tube consists of a converging nozzle and a narrow portion or throat. As motive fluid passes through the converging portion, the velocity is increased and the pressure is decreased, and this decrease in pressure can be used to move some other fluid. * * *

Additionally, plaintiff has called to the court's attention the following description of a "jet pump" in the *Encyclopaedia Britannica*, 1963 edition, Volume 18, page 766B:

Jet Pumps.—In the reciprocating, rotary and centrifugal pumps, there is a moving mechanical part which does work on the moving fluid. However, there is a dynamic type of pump which does not have any moving mechanical parts: it is called variously

a jet pump, injector or ejector. In this type of pump the pressure of a fluid is increased as it flows through an arrangement of fixed channels. A "motive fluid" is used to pump, or induce the flow of, some other fluid.

Jet pumps are found in many applications, pumping many different fluids. A common type is one in which water is the motive fluid and water is the fluid being pumped * * *.

Therefore, while some pumps contain pistons, valves, or other moving parts, it does not appear that they are an essential attribute of all types of pumps.

An additional reason urged by defendant for holding that the "Drain or Fill" is not a pump is that, in addition to the use of the merchandise as a "venturi-type suction apparatus," it is capable of use as a conduit for water. In our view, the latter use is incidental or auxiliary to the primary design and function of the article as a pump for liquids. Consequently, this merchandise should be given its claimed *eo nomine* classification notwithstanding the existence of the additional feature of the bell-shaped attachment. Cf. *United Carr Fastener Corporation* v. *United States (Northern Screw Corp., Party in Interest)*, 54 CCPA 89, C.A.D. 913 (1967), *aff'g* 56 Cust. Ct. 347, C.D. 2648 (1966); *Durbrow & Hearne et al.* v. *United States*, 11 Ct. Cust. Appls. 446, T.D. 39440 (1923); *Durbrow & Hearne Manufacturing Co.* v. *United States*, 9 Ct. Cust. Appls. 148, T.D. 37993 (1919); *Giddings & Lewis Machine Tool Co. et al.* v. *United States*, 61 Cust. Ct. 284, C.D. 3612, 292 F. Supp. 394 (1968); *John Heathcoat & Co., Inc.* v. *United States*, 24 Cust. Ct. 145, C.D. 1223 (1950).

In *United Carr Fastener Corporation, supra*, this court stated (id. at 352):

With respect to [articles having dual or multiple end uses], "the question is not so much what * * * [the imported article] does as what it primarily was constructed and designed to do," insofar as classification of the article is concerned. * * *

It is clear that the bell-shaped stopper attachment merely permits the "Drain or Fill" unit to remain on the water faucet as an extension of the hose, while the hose is being used for filling a washing machine, tub or some other receptacle. The only advantage in using the "Drain or Fill" as an extension of the hose is to avoid the necessity of removing the device from the faucet when the user wishes to fill a receptacle with the attached hose (R.35). During a filling operation, the "Drain or Fill" is completely inactive, and may easily be removed from the faucet and an ordinary rubber hose attached thereto (R.25).

## "Operated by * * * Any Kind of Power Unit"

As correctly pointed out by defendant, it is not enough to support classification under item 660.94 that merchandise be "pumps for liquids," since the provision is qualified by the phrase "whether operated by hand or by any kind of power unit." Defendant strenuously argues that the merchandise fails to meet such qualification, and buttresses its position with the following definitions in *Webster's Third New International Dictionary* (1961), pages 1779 and 2500:

> *power unit* n: an engine usu. of the internal-combustion type mounted with accessories for use in portable operation of mechanical equipment—compare POWER PACK 2
>
> *power pack* n 1: a unit consisting typically of transformer, rectifier, and filter for obtaining a moderate steady direct current from an alternating-current service * * *
>
> *unit* n * * * 2a: a single thing or person or group that is a constituent and isolable member of some more inclusive whole * * * d: a piece or complex of apparatus serving to perform one particular function * * *

Based upon the foregoing definitions, defendant insists that a "power unit" refers to an engine. While such interpretation is supported by Webster's definition of "power unit," *supra*, we think that when Congress included the entire phrase "whether operated by hand or by *any kind* [7] of power unit," it manifested an intent that item 660.94 be given a broader application than that suggested by the dictionary definition of "power unit." The construction urged by the Government would exclude from classification under item 660.94 many types of pumps which are operated by air, gas or fluids. See *Encyclopaedia Britannica* (1970), Volume 18, page 865. In our view, such narrow interpretation was not intended by Congress. We hold, therefore, that since the "Drain or Fill" is activated by the flow of water from a faucet, the articles are operated by a "power unit" within the purview of item 660.94.

### Conclusion

Based upon the testimony and representative sample in this case, we find:

1. That the merchandise involved in this case is known as "Drain or Fill."

---

[7] Emphasis added.

2. That the articles can perform the dual functions of pumping water or serving as an extension of a rubber hose to be used in filling a receptacle with water from a faucet.

3. That the "Drain or Fill" units were primarily constructed and designed to function as a pump, inasmuch as an ordinary rubber hose alone would serve the same filling function as when used with the device.

4. That a water faucet serves in the capacity of a power unit to activate the "Drain or Fill" unit to pump water by suction.

The mode of operation of the "Drain or Fill" brings it within the common meaning of the term "pump" as defined in the authorities to which reference has been made herein.

Since there is no dispute that item 660.94, TSUS, is more specific than item 654.20, TSUS, plaintiff's claim is sustained. Judgment will issue accordingly.